# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| GREGORY ALLEN CASTLE, ) <br>     Plaintiff ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br>  Acting Commissioner of ) <br>  Social Security, ) <br>     Defendant ) | Civil Action No. 2:13cv00047 <br> **MEMORANDUM OPINION** <br><br> By: PAMELA MEADE SARGENT <br> United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Gregory Allen Castle, ("Castle"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Castle protectively filed his applications for SSI and DIB on February 23, 2011, alleging disability as of February 3, 2011, due to diabetes, numbness in his fingers, arthritis, hypertension and high cholesterol. (Record, ("R."), at 175-76, 193, 197.) The claims were denied initially and upon reconsideration. (R. at 89-91, 96-99, 101-03.) Castle then requested a hearing before an administrative law judge, ("ALJ"). (R. at 105.) A video hearing was held on October 23, 2012, at which Castle was represented by counsel. (R. at 22-42.)

By decision dated November 2, 2012, the ALJ denied Castle's claims. (R. at 12-21.) The ALJ found that Castle met the disability insured status requirements of the Act for DIB purposes through December 31, 2014. (R. at 14.) The ALJ found that Castle had not engaged in substantial gainful activity since February 3, 2011, the alleged onset date. (R. at 14.) The ALJ found that the medical evidence established that Castle had severe impairments, namely type II diabetes with peripheral neuropathy in the fingers, arthritis, hypertension and hypercholesterolemia, but the ALJ found that Castle did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-16.) The ALJ found that Castle had the residual functional capacity to perform medium work,[1] that required no more than occasional pushing/pulling with the upper extremities,

---

[1] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2014).

climbing of ladders, ropes or scaffolds, kneeling and crawling, no more than frequent climbing of ramps or stairs, balancing, stooping, crouching and feeling with his upper extremities and that did not require concentrated exposure to temperatures, vibrations, pollutants and chemicals and hazards such as moving machinery and unprotected heights. (R. at 16-17.) The ALJ found that Castle was unable to perform his past relevant work. (R. at 19.) Based on Castle's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Castle could perform, including jobs as a hospital cleaner, a kitchen helper and a hand packager. (R. at 20-21.) Thus, the ALJ concluded that Castle was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 21.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2014).

After the ALJ issued his decision, Castle pursued his administrative appeals, (R. at 6-8), but the Appeals Council denied his request for review. (R. at 1-4.) Castle then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2014). This case is before this court on Castle's motion for summary judgment filed March 3, 2014, and the Commissioner's motion for summary judgment filed June 4, 2014.

## II. Facts[2]

Castle was born in 1956, (R. at 175), which, at the time of the ALJ's decision, classified him as a "person of advanced age" under 20 C.F.R. §§

---

[2] Because Castle does not challenge any of the ALJ's findings with regard to his physical impairments, the undersigned will focus on the facts relevant to Castle's alleged mental impairments.

404.1563(e), 416.963(e). Castle has a high school education and past work experience as a supervisor for a production plant, a machine operator and a machine repairer. (R. at 26, 36, 198.) Castle testified at his hearing that he was terminated from his previous job because he was taking extra bathroom breaks and was not able to keep up with his job. (R. at 27.) Castle also testified as to the effects of several of his physical impairments on his work-related abilities, but he did not offer any testimony as to any mental impairment. (R. at 29-35.) Castle admitted that he was not receiving any ongoing mental health treatment. (R. at 41.)

Vocational expert, Anthony T. Michael, Jr., testified at Castle's hearing. (R. at 35-40, 154.) The ALJ asked Michael to consider a hypothetical individual of Castle's age, education and work experience who could perform medium work with only occasional pushing and pulling with the upper extremities, climbing of ladders, ropes and scaffolds, kneeling and crawling, who could frequently climb ramps or stairs and balance, stoop, crouch and feel with his upper extremities and who would need to avoid concentrated exposure to cold and heat, vibration, irritants, chemicals and hazards such as moving machinery and heights. (R. at 37.) Michael testified that such an individual could not perform any of Castle's past work. (R. at 37.) Michael identified jobs that existed in significant numbers in the national or regional economy that such an individual could perform, including jobs as a hospital cleaner, a kitchen helper and a hand packager. (R. at 37-38.) Michael stated that a significant number of jobs existed should the same individual be limited to light work, including jobs as a mail clerk, a routing clerk and a price marker. (R. at 38-39.) Michael also stated that there would be no jobs available that the individual could perform should he be required to take two additional breaks of 15 to 20 minutes each throughout the workday or if he would miss at least two days of work per month. (R. at 39-40.)

In rendering his decision, the ALJ reviewed records from Dr. John Sadler, M.D., a state agency physician; Holston Medical Group; The Regional Eye Center; Dr. William Humphries, M.D.; Baker Eye Associates; Dr. Bryan Arnette, M.D.; and B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist.

Treatment notes from Holston Medical Group from March 2005 through February 2010 show that Castle had a normal mental status. (R. at 251, 265, 269, 275, 278, 281, 285, 290, 293, 298, 302, 304, 376, 446.) On March 28, 2012, Castle reported that he was depressed and anxious. (R. at 576.) He reported feeling worthless because he was unable to do anything. (R. at 576.) Dr. Bryan Arnette, M.D., diagnosed major depression, single episode. (R. at 578.) He prescribed alprazolam, or generic Xanax, and paroxetine hydrochloride, or generic Paxil. (R. at 579.) On April 30, 2012, Castle reported that his depression was "doing much better." (R. at 568.) He reported that he was tolerating Paxil well. (R. at 568.) Dr. Arnette noted that Castle's depression was stable. (R. at 571.) Dr. Arnette diagnosed major depression, single episode. (R. at 570.) On August 29, 2012, Castle reported that his mood was up and down. (R. at 596.) He reported that he had not been taking his alprazolam "that much," but that he was doing okay. (R. at 596.)

On August 21, 2012, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Castle at the request of Castle's attorney. (R. at 583-91.) The Wechsler Adult Intelligence Scale-Fourth Edition, ("WAIS-IV"), was administered, and Castle obtained a full-scale IQ score of 67. (R. at 584.) Castle reported consuming "one or two beers" daily. (R. at 586.) He denied receiving any formal psychiatric or psychotherapeutic intervention. (R. at 586.) Castle reported seeing flashes of animals, which he associated with his diabetes and visual

problems. (R. at 586.) He reported that he was often "nervous" and that he would "shake all over." (R. at 587.) Lanthorn described Castle's mood as an agitated depression. (R. at 587.) Lanthorn diagnosed major depressive disorder, single episode, severe; generalized anxiety disorder; pain disorder associated with both psychological factors and general medical conditions, chronic; and borderline intellectual functioning. (R. at 590.) He assessed Castle's then-current Global Assessment of Functioning score, ("GAF"),[3] at 50.[4] (R. at 590.)

Lanthorn completed a mental assessment indicating that Castle had a limited, but satisfactory, ability to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 592-94.) He found that Castle had a seriously limited ability to follow work rules, to function independently, to understand, remember and carry out detailed instructions and to behave in an emotionally stable manner. (R. at 592-93.) Lanthorn further found that Castle had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex instructions, to relate predictably in social situations and to demonstrate reliability. (R. at 592-93.) Lanthorn also opined that Castle would be absent from work more than two days a month due to his impairments. (R. at 594.)

---

[3] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[4] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning…." *See* DSM-IV at 32.

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2014). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2014).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

In his brief, Castle argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-6.) The Social

Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2014). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2014). The Fourth Circuit held in *Evans v. Heckler,* that "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

At particular issue in this case is when an ALJ may reject the only psychological evidence of record and then find that a claimant does not suffer from

-8-

Case 2:13-cv-00047-PMS   Document 22   Filed 01/06/15   Page 8 of 10   Pageid#: 666

a severe mental impairment. The Social Security regulations address how the ALJ must evaluate opinion evidence in 20 C.F.R. §§ 404.1527, 416.927. Among the factors to be considered in the ALJ's weighing of a medical opinion are whether a treatment relationship existed, the length, nature and extent of treatment, whether the source examined the claimant, the specialized training of the source and the opinion's supportability and consistency with the other evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6) (2014). This regulation also states that the Commissioner will not give any significance to a medical source's opinion on an issue reserved for the Commissioner's decision, such as the decision as to whether an impairment is severe. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3) (2014).

In this case, the only psychological evidence of record was the report of Lanthorn's August 21, 2012, evaluation. The ALJ's opinion states that he "considered Dr. Lanthorn's opinion, though it has less probative weight … because Dr. Lanthorn examined the claimant just one time and the evidence of record does not fully support the opinion." (R. at 15.) The ALJ then continues to detail how Lanthorn's opinion as to the severity of Castle's mental impairment is inconsistent with the other evidence of record. (R. at 15-16.) While the court may not agree with the ALJ's weighing of the evidence, as stated above, the court may not substitute its judgment for the ALJ's, as long as the ALJ's weighing is supported by the substantial evidence, as it is here.

Even so, once Lanthorn's opinion as to the severity of Castle's mental impairment is set aside, the remaining uncontradicted evidence of record shows that Castle suffered from major depression serious enough to warrant his treating physician prescribing medication in an attempt to treat it. (R. at 568, 570-71, 578-

79, 596). Likely because Lanthorn's evaluation occurred after the state agency's initial and reconsideration determinations, the record does not contain any Psychiatric Review Technique forms or any assessments of Castle's mental impairment on his work-related abilities completed by state agency psychologists. That being the case, I cannot find that substantial evidence supports the ALJ's finding that Castle does not suffer from a severe mental impairment. I will remand Castle's claim to the Commissioner for further development of the record as to the severity of Castle's mental impairment. An appropriate order and judgment will be entered.

DATED: January 6, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE